LEWIS E. HUMPTON, Appellant, v. P. F. UNTERKIRCHER & SONS, et al.

> 97  509
> 106  279
>
> 97  509
> 108  379
> 108  617
>
> 97  509
> 118  419
>
> 97  509
> 122  528
> 122  638
>
> 97  509
> 127  393
> 127  421
>
> 97  509
> d135  425

**Master and Servant:** INDEPENDENT CONTRACTOR. It appeared that defendants, desiring to erect a brick barn, contracted with certain mechanics for its construction, that the contract for the brick work was let to H, and provided that the scaffolding should be furnished by the brick layer, and that the work should be done under the direction of the architect and defendants, and to their entire satisfaction; that the contract for the carpenter work was let under similar conditions to another mechanic; that defendants had no control over the employes of such contractors, or over the method in which the work should be performed; and that plaintiff was employed by H, as a brick layer on the building. *Held*, that the mechanics were independent contractors, and that defendants were not liable for injuries which happened to the servants of such contractors through negligence of the contractors or their servants.

SAME. There being no evidence that defendants owned the real estate or had accepted any of the work, the maxim *sic utere tuo ut alienum non laedas* does not apply.

CONSTRUING OF CONTRACT. A provision in a building contract, that the work is to be done under the direction of the owners and their architect, and to their entire satisfaction, approval and acceptance, does not affect the character of the other contracting party, as an independent contractor, where it is manifest that it contemplates the results to be accomplished, and not the method or manner of their accomplishment.

**Plea and Proof.** It is essential in a suit for negligence, that the particular duty neglected be declared upon; and a recovery cannot be had for one breach, on a petition counting on another.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

THURSDAY, APRIL 9, 1896.

PLAINTIFF was injured by the fall of a scaffold erected by his immediate employer, in the construction of a certain brick building for the defendants, Unterkircher & Sons, in the city of Burlington, and he brought this action to recover damages, alleging that one Hummerum had the contract for doing the brick work, and defendant Hemphill for the carpenter work, all under the direction, supervision, and control of Unterkircher & Sons, or their superintendent employed for that purpose; that plaintiff, while engaged in laying brick in the wall of the second story of the building, received a fall, through the weakness of the floor, upon which a scaffolding was erected to enable him to pursue his work, which resulted in a compound comminuted fracture of the bones of his lower right leg, necessitating the amputation thereof; and that defendants were negligent in not providing proper support for the floor on which the scaffolding was erected. The defendants, George and Fred Unterkircher, admitted that Unterkircher & Sons were engaged in the erection of a building, but claimed that it was being done by independent contractors,— one, Hemphill, having the contract for the carpenter work, and another, Hummerum, having the contract for the brick work; but they denied that they or their superintendent had any control or direction, or right of control or direction, of the manner in which the work should be done, of who should do it, or of the workmen or appliances to be employed in the accomplishment of their purpose; and they further alleged that, at the date of the accident, the work was unfinished and incomplete, and was under the control of the said contractors, respectively; and further denied that they were guilty of negligence in any particular. They further alleged that plaintiff was in the employ of Hummerum, and that he was not in any sense

their servant. They also alleged that plaintiff was guilty of negligence contributing to his injury. On these issues the case was tried to a jury, and, at the conclusion of plaintiff's evidence, the court, on motion of these defendants, directed a verdict for them. Plaintiff appeals.—*Affirmed.*

*Hedge & Blythe* for appellant.

*Blake & Blake* and *P. Henry Smythe* for appellees.

Deemer, J.—The motion to direct a verdict was based upon the grounds; *first*, that there was no evidence to show that defendants owned the real estate or the building which was being erected thereon, or that they were in any manner interested therein; *second*, that no negligence was charged in the petition as against them; *third*, that the evidence shows that the negligence, if any, was that of a fellow-servant of plaintiff; *fourth*, that the relation of master and servant did not exist as between plaintiff and these defendants; *fifth*, that plaintiff knew of the alleged defects in the construction of the floor, and voluntarily remained in his employment, without complaint or promise of repair; and *sixth*, that, by the exercise of ordinary care, he might have known of the defects; but that, notwithstanding, he voluntarily remained at his work, without complaint or promise of repair.

To determine the correctness of the ruling, a consideration of the facts as disclosed by the record is essential. The evidence establishes the following: In the year 1892, Unterkircher & Sons, a firm composed of P. F. Unterkircher, Fred L. Unterkircher, and George L. Unterkircher, desirous of erecting a brick livery barn upon a lot owned by P. F. Unterkircher,

entered into contracts with certain mechanics, among whom were Austin Hemphill and J. Hummerum, for the construction of various parts of the work. Hummerum had a contract for the brick work, which, among other things, contained the following: "The entire work to be done in a good and workmanlike manner, under the direction of E. Kropp and P. F. Unterkircher & Sons, and to their entire satisfaction, approval, and acceptance. * * * In consideration of the faithful performance of the foregoing stipulations and agreements by said second party, the said P. F. Unterkircher & Sons, party of the first part, agree faithfully to have said work duly and fairly estimated by E. Kropp, architect, as rapidly as the work is completed * * * All the scaffolding to be furnished by the brick layer." The portions of the contract omitted relate to the work to be done, amount and terms of payment, and other matters not necessary to be here set out. Hemphill had a contract for the carpenter work, which, among other things, provided: "Said work to be commenced on or before the twelfth day of December, 1892, and to be completed sixty days after the brick work is finished. The entire work to be done in a good, workman-like manner, under the direction of E. Kropp, architect, and P. F. Unterkircher & Sons, and to their entire satisfaction, approval, and acceptance. In consideration of the faithful performance of the foregoing stipulations and requirements by second party, the said P. F. Unterkircher & Sons, party of the first part, agree faithfully to have said work duly and fairly estimated by E. Kropp, architect, as rapidly as the work is completed." Contracts for the stone work, painting, and every other thing needed to complete the building, were made with other parties. The plaintiff is a brick layer, and was employed by Hummerum upon the building. At the

time of the accident the rear and the two side walls of the structure were completed up to the square of the second story,--above the windows of the second floor, where the joists were to be laid. The outside of the front wall was up to the level of the square, and the workmen were then engaged in backing it up; that is, filling up the inside course of the brick work. A scaffold had been erected so that the brick layers could reach and work upon this front wall. The floor of the scaffold had for its immediate support, short pieces of scantling, one end of which was set into the wall, the other nailed to uprights, which rested on the floor of the second story of the building. As the second floor was to be suspended from a truss in the roof, a temporary support was made for the joists, which was to be removed, and rods from above substituted, after the building was completed. The joists of this second floor were laid on girders, and the girders were held up by posts, which, as we have said, afforded temporary support. The support for the girders referred to was two pieces of two by ten, or two by twelve joists, put together and stood up on end, under the girders. It appears that these temporary posts, or supports, were not of sufficient strength to carry the second floor, with the material that was being used for the completion of the brick walls; that one of them gave way, and precipitated the whole of the second floor, with all of the material, scaffolding, and men at work thereon, into the cellar, resulting in the injuries complained of. The second floor, with its supports, was erected by, or under the direction of, Hemphill, the carpenter, with the knowledge, and implied consent, at least, of the defendants and their architects. The scaffolding on which plaintiff was working was built in the ordinary manner, on the inside of the building, by the brick-layer, and no fault can be attributed to him, unless it be that he did not discover the

condition of the supports, and did not notify plaintiff of the condition thereof, on the day of the accident. It appears, from the evidence, that Hummerum's attention was called to the fact that one of these supports was bent on the day plaintiff was injured. It may be that it was his duty to notify the workmen of this fact; but this we need not decide, for no attempt is made to charge him personally in this action. And we will not consider the matter further than to determine whether defendants should be held liable for his neglect. It further appears, from the testimony, that the attention of Kropp, the architect, was called to the insufficiency of the support for the girders some days before the accident; and it also appears that plantiff saw these supports, and knew how the floor of the second story was constructed and sustained. From these facts we are to determine whether either Hemphill or Hummerum was the servant of the defendants, or stood in such relation to them as that they should be held liable for the negligence of either.

Defendants contend that both the brick mason and the carpenter were independent contractors, for whose negligence they are not responsible; while plaintiff, on the other hand, insists that they were servants of the defendants, engaged in doing the work, which they undertook to do, under the control, direction and management of Kropp, the defendants' architect, and that defendants are responsible for the negligence of either. Many rules have been laid down for the determination of the question as to who are independent contractors. But the best definition we have been able to find is that given in *Powell v. Construction Co.*, 88 Tenn. 692 (18 S. W. Rep. 691): "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of his work."

Applying this test to the case at bar, it will be seen that each of these parties was exercising an independent employment; that he contracted to do a certain portion of the work according to his own methods, and without being subject to the control of his employer, except as to the results of the work. It is true that each contract provides that the work was to be done under the direction of the defendants, and their architect, and to their entire satisfaction, approval, and acceptance; but it is manifest that this direction, approval, and acceptance had reference to the time within which it should be performed, with reference to other parts of the work, and to the results to be accomplished, and not to the method, or manner in which it should be performed. Defendants had no control over the men who should be employed by either of these contractors. They could not say who should be employed, or who discharged. They had the right, under their contracts, to say what should be done, but not how it should be brought about, or who should do it.

Appellant relies largely upon the use of the word "direction," as employed in the contracts referred to. We do not regard this, as in any sense conclusive. When we look at the whole contract, it is apparent, that the only direction the architect or the owner could give, was, as to what should be done to accomplish the ends aimed at by the contract. He could not dictate the means or methods to be employed. This is the interpretation which has uniformly been placed upon such contracts. *Hughbanks v. Investment Co.*, 92 Iowa, 267 (60 N. W. Rep. 641); *Callahan v. Railroad Co.*, 23 Iowa, 562; *Nevins v. Peoria*, 41 Ill. 502; *City of Erie v. Caulkins*, 85 Pa. St. 247; *Eaton v. Railway Co.*, 59 Me. 520; *Kelly v. Mayor, etc.*, 11 N. Y. 432; *Miller v. Railway Co.*, 76 Iowa, 655 (30 N. W. Rep. 138). It is perfectly manifest, that the defendants

had no control over Hummerum, in the building of the scaffold, for the contract expressly provides, that he was to furnish it himself. As both of these mechanics were independant contractors, it follows that the defendants are not liable for any injury which may have happened to the servants or employes of such contractors, through the negligence of such contractors or their servants.

The doctrine of *respondeat superior* has no application as a general rule, to such a case, for the contractor is in no sense a servant of the employer. *Kellogy v. Payne*, 21 Iowa, 575; *Waltemeyer v. Railway Co.*, 71 Iowa, 626 (33 N. W. Rep. 110); *Wood v. School District*, 44 Iowa, 27; *Miller v. Railway Co., supra; Wood v. Cobb*, 13 Allen, 58; *Kelley v. Norcross*, 121 Mass. 508; *Fanjoy v. Seales*, 29 Cal. 244. There are some exceptions to the rule above stated; for instance, if the injurious act complained of was contemplated by the contract, or if the work was necessarily dangerous or harmful *per se*, and in some other cases, the contractee is liable. *Wood v. School District, supra.* But this case is not claimed to come under any of these exceptions, and no further attention need be given them.

It is contended, on behalf of appellant, however, that it was the duty of the defendants to furnish him a safe place to work, and that, as they did not do so, they are liable, although the fault may have been originally with the carpenter, who was an independent contractor. This contention, if it has any merit, is based upon the assumption that the plaintiff was the servant of the defendants, and was in their employ as such. We have already seen that plaintiff was not a servant of the defendants. He was employed by Hummerum, and was subject to his orders and directions. The duty of furnishing him a safe place to work devolved upon his immediate

employer, and not upon the defendants.  To them he was no more than a stranger; and they owed him no other duty than to anyone who might come upon their premises under an implied license or invitation.  He was there rightfully, of course, in the prosecution of his work; but defendants owed him no special duty. Moreover, the contract between Hummerum and the defendants expressly made it the duty of the contractor to erect and furnish the scaffolding.  Defendants had no part or lot in it.  There was no contract relation, either express or implied, between plaintiff and the defendants.  As between them there was no relation whatever, other than that which springs from the common bond of society; which imposes upon every man the duty of so using his own as to do no injury to his fellow-men.  It follows, then, that the plaintiff cannot recover because of any breach of duty owing him by the defendants, unless it be the general one last above stated.  But he does not rely upon this one as a basis for his action, and we have no occasion to consider whether he could recover under such a theory.  It is essential, in any suit for negligence, that the particular duty neglected be declared upon.  A recovery cannot be had for one breach on a petition counting upon another. *Railroad Co. v. Stark*, 38 Mich. 714.  The breach counted upon in this case was of the duty owing by a master to his servant.  No other can be considered, It is well to note, in this connection, however, that the pleadings do not allege, nor does the proof show, that the defendants owned the real estate in question. Neither is there any evidence showing, or tending to show, that they had accepted the carpenter work.  No part of the building had been completed or accepted by them at the time the accident occurred; so that there is no room for the

application of the maxim, *"Sic utere tuo ut alienum non lædas."*

Appellant relies upon the cases of *Fink v. Ice Co.*, 84 Iowa, 322 (51 N. W. Rep. 155), and *Haworth v. Manufacturing Co.*, 87 Iowa, 765 (51 N. W. Rep. 68, and 62 N. W. Rep. 325). Neither of these cases is in point. In the *Fink Case*, the defendant constructed the trestle work, and the plaintiff was in the employ of the defendant,---was its servant, engaged in its work. In the *Haworth Case*, plaintiff was in the employ of the defendants, in the erection of a building near its works, under the personal supervision of the firm, and defendants furnished the material upon which plaintiff was working, which proved unsound. The distinction between these cases and the one at bar is so manifest that we need not say more. The learned district judge correctly sustained the motion to direct a verdict. Our conclusions find support in the cases of *Tredwell v. Mayor, etc.*, 1 Daly, 123, and *Mercer v. Jackson*, 54 Ill., 397. The judgment is AFFIRMED.