[No. 4948.]

## Good et al. v. Johnson.

1. **Practice in Civil Actions—Contracts—Good Faith—Instructions.**

A construction company, under contract to construct a roadbed for a railroad company, let a contract for grading a part of the road to a contractor, who, in turn, sublet under a written contract a portion of the work to a third party. An employee of such third party was injured and sued the contractor. There was no evidence of bad faith on the part of any of the parties to the written contract. Held, that an instruction that, if the contract was made in good faith and the employee was employed by the third party as a subcontractor, the contractor was not liable, is erroneous, it being within the province and the duty of the court

to determine the relation between the contractor and subcontractor.—P. 443.

**2. Master and Servant—Contracts—Contractors—Subcontractors—Relation as to Employees.**

A construction company, under contract to construct a roadbed for a railroad company, let a contract for grading a part of the road to a contractor, who, in turn, sublet a portion of the work to a third party under a written contract requiring the work to be performed under the supervision of the engineer of the construction company, who was empowered to discharge employees of such subcontractor, and to notify him to increase the force of men if necessary, and authorizing the engineer to cancel the contract under certain conditions, and requiring the subcontractor to save the contractor harmless from all damages that might be caused to third persons during the prosecution of the work, and giving the option to the contractor to pay wages directly to the employees of the subcontractor. Held, that such contract did not create the relation of master and servant between the contractor and subcontractor, so as to create a liability upon the part of the former for injuries received by an employee of the latter.—P. 446.

**3. Same—Equitable Estoppel.**

An employee of a subcontractor, occupying the position of an independent contractor, brought an action against the contractor to recover damages for injuries received during his employment, and at the trial testified that he was employed by the contractor, but it appeared from his testimony that he was directly employed by the subcontractor, and that he assumed the former premise upon the theory that the latter was the agent of the former for the purpose of employing laborers. The contractor exercised the option of paying the wages direct to the employees of the subcontractor, in order to protect himself from liens. The payments were made by checks, showing that they were given for work done on account "pay roll" of subcontractor. The contractor never represented that the subcontractor was his servant. Held, that the contractor, as a matter of law, was not liable on the ground of estoppel by conduct for the injuries received.—P. 448.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Frank T. Johnson, Judge.*

Action by Gust Johnson against George S. Good, James Kerr, and A. G. Palmer, copartners as George

S. Good and Company. From a judgment for plaintiff, defendants appeal. *Reversed and remanded.*

Messrs. FELTON & MORROW, for appellants.

Mr. N. Q. TANQUARY and Mr. CHAS. ROACH, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Action for damages for personal injuries. The Denver and Northwestern Pacific Railroad Company contracted with The Colorado and Utah Construction Company for the building of the former's roadbed. The construction company let a contract for grading a part of the road covered by its contract to George S. Good & Co., and the latter, in turn, sublet a portion of their work to Swanson, Johnson & Co. The plaintiff, Gust Johnson, was employed by Charles Swanson, a member of the firm of Swanson, Johnson & Co., as a common laborer. Johnson, another member of the firm who was acting at the time as its foreman, ordered plaintiff to do some work in a tunnel which was then being driven, in complying with which plaintiff was injured, as he says, through the foreman's negligence.

Plaintiff seeks to hold Good & Co. responsible therefor, first, because Johnson was their servant and foreman—the relation of Swanson, Johnson & Co. to Good & Co. being, as it is said, not that of independent contractors, but merely that of servants, in the sense that the master is responsible for their negligence; second, if the true relation between Good & Co. and Swanson, Johnson & Co. is not that of master and servant, nevertheless because of certain conduct of Good & Co. they are estopped now to deny that such was the relation. From the judgment which the plaintiff recovered against Good & Co., they have appealed.

The trial court committed grave and prejudicial error, necessitating a reversal, in its instructions to the jury with respect to the relation between defendants and Swanson, Johnson & Co. Therefore, questions argued by counsel relating to the negligence of defendants and contributory negligence of the plaintiff are eliminated from the discussion.

1. The contract, and the only contract, between Good & Co. and Swanson, Johnson & Co. is in writing. Therein the former are called contractors, the latter subcontractors, and, for convenience, they will be so designated in the opinion. There is not a particle of evidence which tends to show bad faith on the part of any of the parties to the contract in entering into it. The work done by the subcontractors was done under the written agreement, and not otherwise. There is no evidence that the contractors assumed to exercise, or, in fact, exercised, any control whatever over the subcontractors other than, or different from, that which any owner or principal contractor retains over the one who does work under an agreement that leaves him entirely free as to the manner or mode in which that work shall be done, though requiring it to be done according to plans and specifications agreed on beforehand.

The contract being in writing, the relation which it created between the parties thereto is exclusively within the province of the court to determine, and should not have been submitted to the jury. In instruction No. 5, the court told the jury, if they believed that the contract between the parties was made in good faith, and that plaintiff was employed by Swanson, Johnson & Co. as subcontractors, then the defendants would not be liable. The court should not have submitted to the jury the question of good faith. That element was not involved in the case, for there was no evidence whatever tending to show bad faith.

In this particular the court should have instructed the jury that the contract, on its face, inasmuch as it was unquestionably executed by the parties in good faith, did not, considered in connection with the surrounding circumstances, constitute Swanson, Johnson & Co. servants of the contractors.

The Colorado and Utah Construction Company was the original or first contractor to which was let all, or a large part, of the construction work for the railroad company. It is fair to assume that the entire work of grading and preparing the roadbed for rails was to be done in accordance with plans and specifications of the railroad company itself, to which those actually doing the work must conform. And it is only fair to say, what sufficiently appears from the record, that, in the written agreement between Good & Co. and Swanson, Johnson & Co., the various provisions which plaintiff here relies on as constituting the relation between them one of agency, or that of master and servant, are substantially the same which are found in the contract that defines the relation of the construction company and Good & Co., and were put in these various construction contracts to secure the general result which the railroad company sought to accomplish, viz., to have a satisfactory roadbed. In the light of these considerations, and from the language of these particular clauses, interpreted in the light of the entire contract including the plans and specifications which are a part thereof, let us proceed to an examination of these provisions of the contract which plaintiff says give rise to the relation of master and servant between the contractors and the subcontractors. The clauses are 3, 5, 9, 10, 15, 16½, 21 and 26.

The 3rd clause says that the work is to be performed under the direction and supervision of the engineer of the construction company, who is given

power to condemn and reject any or all work or material which does not conform to the agreement, and defective work and material is to be remedied by the subcontractors at their cost and expense to the satisfaction of the engineer.

The 5th clause authorizes this engineer to discharge any employee of the subcontractors whenever, in his opinion, the interests of the construction company or the contractors demand the same.

The 9th clause authorizes the engineer, if he thinks the work is not progressing rapidly enough to secure its completion within the time limited by the contract, to notify the subcontractors to increase the force sufficiently to comply therewith, and, if the subcontractors fail within a certain time to comply with this notice, such failure shall be considered as a breach and forfeiture of the agreement, and the contractors may declare the contract forfeited and enter upon and take possession of the work, and re-let it, or perform the work themselves.

The 10th clause is that the contractor may reduce the force engaged upon the work, or suspend it for any length of time, or may discontinue the work and cancel the contract by paying the subcontractor all that is coming to him up to the time of suspension.

The 15th clause gives the engineer power to direct the application of forces to any portion of the work which, in his judgment, requires it.

Clause 16½ requires the contractor to furnish the subcontractors, free of charge, all tools and track and blacksmith outfit, and keep the same in repair.

The 21st clause requires the subcontractor to save harmless the contractor from all damages that may be caused to third persons during the prosecution of the work.

The 26th gives the option to the contractors, in order to protect themselves against liens, to pay di-

rectly to the laborers or other persons employed by the subcontractors the wages which they have earned, and to charge such payments against the contractors as so much paid on the contract.

In our judgment, neither of these clauses, nor all combined, have the effect which the plaintiff contends for them, as a review of some of the leading authorities will disclose.

Various rules have been enunciated for determining the question as to who are independent contractors. In *Powell v. Virginia Construction Co.*, 88 Tenn. 692, Lurton, J., says: "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and, without being subject to control of his employer, except as to the result of his work." This definition has been quoted with approval by Mr. Justice Deemer in *Humpton v. Unterkircher*, 97 Iowa 509.

The plaintiff in the case in hand, at the time he received his injury, was assisting in driving a tunnel in obedience to the order of his foreman, one of the subcontractors. There is not a clause in this contract which, by any fair construction, gives to the contractors the right to control the conduct of the subcontractors in the manner in which they might do this work.

A number of cases on this subject are collated in section 622 and notes, 1 Thompson's Comm. on the Law of Negligence, and the general statement is there made that, where the employer retains only such supervision and control and direction as will secure the proper result from the work, and not as to the means by which it is accomplished, the relation of master and servant does not exist. See, also, 1 Shearm. & Redf. on Law of Negligence (5th ed.), §§ 164 *et seq.*

In section 1063, 3 Elliott on Railroads, it is said, in speaking of a railway construction contract, that neither the reservation of power by the company to terminate the contract when, in the discretion of its engineer the work is not progressing satisfactorily, the right to exercise general supervision and inspect the work as it progresses, nor the right to enforce forfeiture, will change the relation of an independent contract so as to render the company liable as for the negligence of its servant, and the fact that the company pays the employees of the contractor directly in order to protect itself against mechanics' liens does not destroy the independent character of such an employment.

Clauses similar to those in the present contract, and still other provisions relating to the supervision which the principal contractor, or owner, retained over the execution of the work, some of which go much further than any reservation herein contained, have been construed by courts, and almost universally held not to make the relation thereunder that of master and servant. On the contrary, such employment was ruled to be an independent one, exempting the contractor from the negligence of the contractees. The cases most nearly in point, and clearly in support of our conclusion, are: *Rogers v. R. R. Co.*, 31 S. Car. 378; *Pioneer Construction Co. v. Hansen*, 176 Ill. 100; *Foster v. City of Chicago*, 197 Ill. 264; *Mayhew v. Sullivan Mfg. Co.*, 76 Me. 100; *Morgan v. Smith*, 159 Mass. 570; *Corrigan v. Elsinger*, 81 Minn. 42; *Uppington v. City of N. Y.*, 165 N. Y. 222; *Harding v. Boston*, 163 Mass. 14; *Hughes v. Railway Co.*, 39 Ohio St. 461; *Thomas v. Railway Co.*, 191 Pa. St. 361; *Callan v. Bull*, 113 Cal. 593; *Blumb v. City of Kansas*, 84 Mo. 112; *City of Erie v. Caulkins*, 85 Pa. St. 247.

*City of Denver v. Rhodes*, 9 Colo. 554, and cases somewhat similar, cited by plaintiff, are not in his

favor.  Among other reservations of power by the city in the Rhodes case was the power to direct as to the place, time and mode of doing the work by its contractor.  It was for this reason that the contractor was held to be a servant of the city.  The present case is more like that of *Chicago, etc., Ry. Co. v. Ferguson,* 3 Colo. App. 414, where the railway company could not, and did not, exercise control over the work after letting the contract, and because of this freedom of the contractor in the manner of doing the work, the employment was regarded as independent.

Applying the principles of the foregoing cases to the contract before us, we are clearly of opinion that Swanson, Johnson & Co. were independent contractors, and not servants of Good & Co.  They did not reserve the right to direct, and, as a matter of fact, did not, and lawfully could not, exercise any control over the subcontractors, as to the manner or mode of doing the work.  Unless, therefore, the true relation between these parties was different from that expressed in the contract, Good & Co. are not liable for the injuries to the plaintiff.

2.  But the plaintiff says that the facts in evidence create an equitable estoppel against defendants.  To determine this contention, we must examine the evidence.  The plaintiff says that he was employed by Good & Co., but it appears from his own testimony that the man who directly employed him was Charles Swanson, a member of the firm of Swanson, Johnson & Co., and, when plaintiff says that he was employed by Good & Co., that is his conclusion from his assumed premise that Swanson was the agent and foreman of Good & Co. for the purpose of employing laborers.  Neither at the time of the employment, nor at any other time, until after the injuries were received, did plaintiff know or suppose that Good & Co. had immediate charge of this work, or

that he was their employee. He did not know of the existence of that partnership. He was hired in the city of Denver by, and sent to the place of work, and was subject at all times to the directions of, Swanson or Johnson, and received orders from no other persons. Swanson and Johnson were not in fact foremen for Good & Co. or their employment agents, and it is clear that the relation between them was not other than that expressed in the written contract to which we have already adverted.

Good & Co. exercised the option which they had under the contract to protect themselves against liens to pay direct the wages of the employees of Swanson, Johnson & Co., and the plaintiff was paid by checks, one of which was submitted in evidence signed by Good & Co., made payable to the order of H. C. Mills (their bookkeeper), and by Mills indorsed to the plaintiff. This check, however, which the plaintiff himself says is similar to the two others which he received, shows on its face that it was given for work done on account "pay-roll of S. J. & Co.," meaning Swanson, Johnson & Co. This check must be taken in its entirety, and the mere fact that it was drawn by Good & Co. does not establish the fact that they were plaintiff's employers; it shows that it was intended as a payment of one who was on the "pay-roll of S. J. & Co." Certainly the check was sufficient to put plaintiff on inquiry to learn whose employee he was, if he had any doubt about it. There is no evidence that Good & Co. ever represented directly or indirectly that Swanson, Johnson & Co. were their employees or servants, and there are no circumstances in the record to warrant the inference that they were.

While plaintiff was working, he took his meals at a boarding house which was conducted for the benefit of Good & Co. by one of its employees, and the price of board was deducted before plaintiff was

paid for his work. One dollar each month was also deducted from his wages for the benefit of the hospital, which Good & Co. conducted near the camp where plaintiff was working, for the benefit of all the employees along the line, including their own and those of their different subcontractors. When plaintiff was injured, he was taken to this hospital, and afterwards sent, as he says, by Good & Co. to Denver for treatment.

There is no evidence that, at the time of such deduction plaintiff knew about the payment of hospital fees to Good & Co., or that he was aware that the boarding house was kept by them, or that these facts, or all of the facts recited, in any degree or measure, influenced him either in accepting or remaining in Swanson & Co.'s employment, or that he did so believing that his employers were Good & Co. and not Swanson, Johnson & Co.

We observe, in the first place, that no question of estoppel has been pleaded. If, however, that omission be ignored and the question of estoppel applies to this sort of a case, it is entirely clear that some of the essential elements are absent. In *Griffith v. Wright,* 6 Colo. 248, the following were held to be the essential elements of estoppel by conduct:

"First. There must have been a representation or concealment of *material facts.*

"Second. The representation must have been made with *knowledge* of the facts, unless the party making the representation was bound to know the facts, or ignorance of them was the result of gross negligence.

"Third. The party to whom it was made must have been *ignorant* of the truth of the matter.

"Fourth. It must have been made with the *intention* that the other party should act upon it; but gross and culpable negligence upon the part of the

party sought to be estopped, the *effect* of which is to make fraud on the party setting up the estoppel, supplies the place of intent.

"Fifth. The other party must have been *induced* to act upon it."

The first of the foregoing elements is not clearly established. There certainly is no evidence tending to show that Good & Co. intended that the plaintiff should act upon any alleged conduct on their part with reference to the true relation between them and Swanson, Johnson & Co., nor was there any gross or culpable negligence upon their part, and it is conclusive that plaintiff was not in any degree whatever induced to act upon the faith of any alleged representations or conduct of the defendants.—*Brant v. Va. C. & I. Co.,* 93 U. S. 326.

In *Smith v. Belshaw,* 89 Cal. 427, Dickinson, one of the defendants, was in possession and control of, and working, a coal mine under a contract with Belshaw, the owner. It was sought to charge Belshaw for the negligence of Dickinson, whereby the plaintiff Smith was injured. The miners were paid their wages at defendant Belshaw's store, and some of the miners, including plaintiff, thought they were working for Belshaw. The court said that such circumstances are too slight to defeat the terms of the contract and the labor performed under it, saying that what the miners thought as to who was their employer is immaterial. The court also said that the action was not on contract based on ostensible agency, but was in tort, and must rest upon the actual facts and the actual relations existing between the parties. The court held that the owner in that case was not bound to give any notice to the miners that he had given up control of his mine.

In *Johnson v. Owen,* 33 Iowa 512, the court, speaking to the point of estoppel, said:

"The acts and conduct of defendant, which induced the plaintiff to believe that Nash was defendant's servant and to act on that belief, if intended to have that effect, would estop defendant to deny his liability for Nash's acts. But it would be obviously unjust to hold him responsible on account of acts and conduct which might be done by one not an employee, yet which would be reasonable cause of belief, in the mind of another, that he was, in fact, an employee. If such belief existed in the mind of plaintiff on account of the acts of defendant, and plaintiff, acting thereon, entered or remained in the service of defendant, or the like, and defendant intended to create, by his acts, that belief, he would be liable. * * * But a bare belief of plaintiff, though founded on a reasonable cause, that Nash was defendant's servant, which in no way had influenced his action, which was not intended to be created by defendant, and which was not the natural result of his acts, could not make him liable as the employer of Nash. It would be a very dangerous rule to hold that inferences and opinions concerning men's actions, although founded upon reasonable cause, would render them liable for the acts of others."

So, in this case, we say that, whatever may have been the acts of Good & Co. with respect to their relation to Swanson, Johnson & Co., there is not any evidence at all that they were intended to have, or had, any influence whatever—or that such was the natural result of defendant's conduct—upon plaintiff, in entering upon or remaining in the employment for which he was engaged by Swanson. That portion of instruction No. 5, given by the court upon this subject, was therefore erroneous. It was fatally defective in that some of the elements of the alleged estoppel upon which the instruction was based were

not present in the case, particularly the fifth one above mentioned.

Besides, opportunity for plaintiff to know what relation Swanson, Johnson & Co. sustained to Good & Co. was given at the time he received his first check, which was several weeks before the injury occurred. That check itself shows that it was a payment of an employee not of Good & Co., but of "S. J. & Co.," and this was sufficient to put the plaintiff on inquiry if he was ignorant as to who his employers were, or if the knowledge concerning the same was of any importance to him.

For these prejudicial errors, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.