Argued April 9, affirmed April 30, 1918.

## SCALES *v.* FIRST STATE BANK.*

(172 Pac. 499.)

**Contracts—Construction—Duty of Court.**

1.  Where the language of a contract introduced in evidence is plain and unambiguous, it is, under Section 136, L. O. L., the province of the court to determine its legal effect.

**Principal and Agent—"Independent Contractor" — Interference With Employer.**

2.  Where a bank hired one to move wood within a specified time at a price per cord, assuming no control over the means of transportation of the wood, but only agreeing to identify that portion of the wood to be moved, the relationship of employer and independent contractor obtained.

[As to who is an independent contractor, see note in **Ann. Cas.** 1913B, 573.]

**Principal and Agent—Independent Contractor — Contract — Construction.**

3.  Where a bank hired one to move wood, neither the absence of a provision requiring him to give bond nor the presence of provisions requiring care in moving the wood, and protection from damage by fire, and that the employer could take control upon breach, militated against relationship of employer and independent contractor.

---

*As to persons deemed to be independent contractors within meaning of rule relieving employer from liability, see extensive notes in 65 L. R. A. 445; 17 L. R. A. (N. S.) 371.        REPORTER.

Principal and Agent—Liability for Supplies Furnished — Independent Contractor.

4. The presence in a contract between an employer and an independent contractor of stipulations to hold the employer harmless from liens for labor and material, and exempting the employer from liability for personal injuries, without a clause exempting from liability for labor and supplies, neither makes the contractor a mere agent, nor admits liability for labor and supplies furnished him.

Evidence—Proof of Agency—Third Parties not Bound by Written Contract of Agency.

5. Where the pleadings authorize evidence of express or implied contract of agency, of agency by ratification, and by estoppel to establish employer's liability for goods sold to independent contractor, the plaintiff not being a party to agreement creating relationship of employer and independent contractor, nor at time of sales having knowledge thereof, is not bound by the contract of agency, but may introduce other evidence of agency without pleading modification of the contract.

Appeal and Error—Harmless Error—Exclusion of Evidence.

6. Where proof of agency that was wrongfully excluded was insufficient, if introduced, to establish the relation, the error was harmless.

Principal and Agent—Independent Contractor—Payment of Workmen by Employer.

7. The payment of workmen by an owner or employer does not necessarily transform an independent contractor into an agent.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

Alice Scales brought this action against the First State Bank, a corporation, to recover the price of groceries, meats and other supplies. The plaintiff prosecuted the action on the theory that the goods were purchased by Harry J. Ewing as an agent of the defendant. The bank asserted that Ewing was an independent contractor. At the conclusion of the testimony for the plaintiff the court allowed the defendant's motion for a nonsuit and the plaintiff appealed from the consequent judgment.

The defendant had caused to be cut, ricked and corded about 6,000 cords of red fir wood on a tract of land located about one-half mile from the Sandy

River. On April 14, 1915, Harry J. Ewing entered into a contract with the bank to transport to Troutdale all the wood except such sticks as were doty, soggy or otherwise unfit for the market, and also except such portions as the bank might reserve. The portions reserved were to be marked in some appropriate manner. The contract required Ewing to place all the cordwood, not excepted or reserved, in the Sandy River at a designated point and then to drive the wood down the river in a careful and prudent manner to Troutdale, where he was properly and securely to boom the wood. Ewing agreed that immediately after booming the wood he would remove it from the river by means of a conveyor and load it on cars or wagons to be provided by the defendant, or, if the bank so directed, rick and cord the wood on certain premises. Ewing specifically agreed to construct all roadways and chutes necessary for moving the wood to the river and at his own expense to construct all booms and dams necessary for driving the wood or for holding it in the river. The contract obligated Ewing to pay the defendant $3 per cord for all the wood left on the bars and banks of the river, and to exercise "the greatest of care and precaution" so as to prevent any wood from escaping from the boom. The defendant agreed to furnish and install the conveyor and an engine to drive it, but it is also stipulated in the writing that the First State Bank does not assume or retain any control or supervision over the same while being operated and used by Ewing. It is also agreed that Ewing shall make all repairs to the conveyor and engine while in use, and that he "will furnish all wagons, sleds, horses and all materials and labor of every kind and description which shall be used by" him "in complying with and carrying out the terms and

conditions of this contract, all at the expense of" Ewing and without cost and expense to the First State Bank. The bank agreed to pay Ewing $1.15 per cord for all wood delivered by him at Troutdale; but advance payments were to be made as follows: forty cents per cord "as soon as all said cordwood is placed in" the river and an additional 50¢ per cord payable between the 1st and 10th days of May, June and July, 1915, for every cord ricked for storage or loaded on cars and wagons at Troutdale "during the preceding month." Ewing agreed to place at least 2,000 cords in the river on or before May 10, 1915, and to place all the wood in the river on or before June 1, 1915. The contract obligated Ewing to make two drives. He was to start the first drive on or before May 10, 1915, and finish it on or before May 20, 1915; and he was to start the second drive June 1, 1915, and finish it on or before June 15, 1915. Time is declared to be of the essence of the contract and the writing states that "all the terms and conditions herein stated must be completed on or before July 15, 1915." Ewing also agreed to save the bank "harmless from any and all labor and material men's liens," to pay "all railroad demurrage which may be incurred because of any fault, negligence or carelessness on his part," and to "exercise the greatest of care and precaution in avoiding any and all fires in and about the premises which would in any way cause the wood" to be damaged or destroyed. The writing contains a paragraph which states that the bank shall not be held responsible for any personal injuries sustained by any person employed by Ewing in transporting and delivering the wood. The concluding stipulation empowers the bank "to take full control and possession" and to prosecute the work to

completion in the event Ewing fails to comply with any of the terms or conditions of the contract.

Ewing entered upon the performance of his contract on April 15, 1915. Three different camps appear to have been established. John Dellis was the foreman of one camp; one Bosh was the foreman of the second camp and Daugherty, Garthers and Habbard seem to have been the persons who acted successively as foremen of the third camp. Ewing continued with the work until June 23, 1915, when he had placed about 3,000 cords in the river and the bank then terminated the contract and took charge of the wood.

After reciting that the defendant owned about 6,000 cords of wood which it undertook to transport to Troutdale, the complaint avers that Ewing was at all times the agent of the defendant with authority to supervise the transportation of the wood, to establish camps, to employ men and to purchase supplies. It is . then alleged that at the "request of the defendant and of defendant's said agent" J. Scales sold and delivered groceries and supplies "unto the defendant and said agent" at each of the three camps, and that E. R. Leaf sold and delivered meats "unto defendant and said agent" at the Dellis camp. There are appropriate allegations showing the assignment of the claims to the plaintiff; and, after crediting certain payments, the complaint concludes with a demand for a judgment against the defendant for the balance due.

The answer denies that Ewing acted as an agent of the bank; and for an affirmative defense the defendant alleges that Ewing was an independent contractor.

The plaintiff replied by averring that the defendant is estopped from claiming that Ewing was an independent contractor because; (1) the bank held Ewing out as its agent in all matters appertaining to the re-

moval of the wood, inquired about the bills, examined
the statements of articles sold and delivered at the
camps, required all checks to be approved by A. Myers,
the president of the bank, employed, discharged and
paid men who worked under the supervision of Ewing;
and the plaintiff's assignors relied upon the bank for
payment when selling the goods; (2) the bank was
guilty of fraud in causing and permitting the goods
to be sold and then receiving and retaining all the
benefit of the goods, when it knew that Ewing was in-
solvent and the sellers were not aware of his insol-
vency; (3) by taking control of the work on June 23,
1915, and undertaking to complete it and by retaining
the benefit of the work done by Ewing as well as the
benefits resulting from the use of the goods sold by the
plaintiff's assignors, the bank ratified Ewing's pur-
chase of the meats, groceries and supplies so as to
make the bank liable for the acts of Ewing.

AFFIRMED.

For appellant there was a brief and an oral argu-
ment by *Mr. Henry S. Westbrook*.

For respondent there was a brief over the names of
*Messrs. Bronaugh & Bronaugh* and *Mr. Carl M. Little*,
with an oral argument by *Mr. Jerry E. Bronaugh*.

HARRIS, J.—Harry J. Ewing was the first witness
called by the plaintiff. After asking a few prelimin-
ary questions the attorney for plaintiff handed the wit-
ness the written contract, signed by Ewing and the
bank, and asked him to "state whether or not that is
the agreement you said you made?" The witness
answered thus: "Yes, sir; that is it"; and he subse-
quently added that he entered upon the work about
April 15th "under that agreement." The writing was

offered in evidence by the plaintiff and received by the court and for the sake of brevity will be called Exhibit ''A.'' The bank contended, and the court ruled, that Exhibit ''A'' created the relation of employer and independent contractor and not that of master and servant or principal and agent. The plaintiff contends that Exhibit ''A'' ''by its terms makes Harry J. Ewing no more than a foreman, overseer and agent of the defendant.''

1–4. The language of Exhibit ''A'' is plain and unambiguous; and it is therefore the province of the court to determine its legal effect: Section 136, L. O. L.; *Simonds* v. *Wrightman,* 36 Or. 120, 125 (58 Pac. 1100); *Sharp* v. *Kilborn,* 64 Or. 371, 374 (130 Pac. 735); *Good* v. *Johnson,* 38 Colo. 440 (88 Pac. 439, 8 L. R. A. (N. S.) 896); 14 R. C. L. 78; 2 C. J. 964; 1 Mechem on Agency (2 ed.), § 294. An examination of the writing will disclose that, standing alone and by itself, it indisputably creates the relation of employer and independent contractor.

In *Powell* v. *Virginia Construction Co.,* 88 Tenn. 692 (13 S. W. 691, 17 Am. St. Rep. 925, 928), Mr. Justice LURTON says that ''an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work.'' While it is not always easy to frame a definition which accurately states essential elements and at the same time is capable of being applied to all cases, the one just given has the merit of being concise and also has the prestige that follows from frequent judicial approval: *Pottorff* v. *Fidelity Coal Mining Co.,* 86 Kan. 774 (122 Pac. 120); *Humpton* v. *Unterkircher,* 97 Iowa, 509 (66 N. W. 776); *Good* v. *Johnson,* 38 Colo. 440 (88 Pac. 439, 8 L. R. A.

(N. S.) 896).   Stated broadly, the test for determining whether a person employed to do certain work is or is not an independent contractor, is the control which the employer reserves over the work and has the right to exercise.   Where the person doing the work is an independent contractor the will of the employer is represented in the result contracted for while the general control over means and methods is given to the contractor: *MacDonald* v. *O'Reilly,* 45 Or. 589, 600 (78 Pac. 753); 1 Mechem on Agency (2 ed.), §§ 40, 336; 16 Am. & Eng. Enc. Law (2 ed.), 187; 2 C. J. 424; 14 R. C. L. 67; *Messmer* v. *Bell & Coggeshall Co.,* 133 Ky. 19 (117 S. W. 346, 19 Ann. Cas. 1).   The delivery of the wood within a fixed time is the result contracted for.   It is true that the contract provides for placing the wood in and driving it down the river but the means and methods to be employed in placing the wood in the river and for driving it to Troutdale were under the control of the contractor.   Ewing had the right to employ, pay and discharge men.   The bank had no control over the men to be employed or the amount of wages to be paid to them.   The bank stipulated for a certain result and Ewing agreed to accomplish it within a certain time.   The only construction that can reasonably be placed upon Exhibit "A" is that it created the relation of employer and independent contractor.

The plaintiff argues that Exhibit "A" should be construed as a contract of agency because: (1) no bond was required of Ewing although one was required of the person who cut and corded the wood; (2) the bank reserved the right to say how much of the 6,000 cords was to be moved; (3) Ewing agreed to exercise the greatest of care and precaution in moving the wood;

(4) the bank admits a liability for labor and materials by requiring Ewing to save the defendant harmless from liens for labor and material; (5) Ewing agreed to exercise the greatest care and precaution to prevent damage by fire; (6) the contract expressly exempts the defendant from liability for personal injuries, while "no provision is made about defendant's liability for labor, supplies and materials"; and (7) a breach of the contract by Ewing permits the bank "to take full control and possession" and prosecute the work to completion.

The presence or absence of a provision requiring Ewing to give a bond does not in the slightest degree tend to determine the nature of the relation created by the writing. The bank had 6,000 cords of wood; it desired to move some but not all the marketable wood to Troutdale. The agreement required the bank to mark the wood so as to enable Ewing to know what portions were not to be moved by him. The parties to the contract merely provided a means for identifying the wood to be handled by Ewing, without reserving to the bank any control over the means or methods to be employed in handling the wood after its identification. The parties had a right to fix the degree of care to be exercised by Ewing in moving the wood and they had the same right with reference to the care to be exercised in preventing loss by fire. Manifestly, the presence of these two provisions argues against rather than for the creation of the relation of principal and agent.

The stipulation obligating Ewing to save the bank harmless from liens for labor and materials has no tendency to create an agency. The presence of a provision exempting the bank from liability for personal injuries and the absence of a provision exempting the

bank from liability for labor, supplies and material do not constitute an implied admission of liability for labor, supplies and materials. Ewing did not place all the wood in the river within the time fixed by the agreement, nor did he drive all the wood down the river to Troutdale within the prescribed time, and apparently for these and possibly for additional reasons, the bank terminated the contract and took charge of the wood under the stipulation empowering it "to take full control and possession" whenever Ewing breached the contract. This stipulation does not necessarily make the contractor a mere servant or an agent. The contractor does not lose his independence merely because the employer is empowered to terminate the employment if the contractor breaches his contract; but the relation is to be determined from all the *indicia* of control: *Solberg* v. *Schlosser,* 20 N. D. 307 (127 N. W. 91, 30 L. R. A. (N. S.) 1111); *United Painting & Decorating Co.* v. *Dunn,* 137 Ga. 307 (73 S. E. 492); *State* v. *Coe,* 72 Me. 456; *Kuehn* v. *Milwaukee,* 92 Wis. 263 (65 N. W. 1030). Every element necessary for the existence of the relation of employer and independent contractor is found in Exhibit "A," and if the rights of the litigants are to be measured by the writing alone, the conclusion is inevitable that Ewing was an independent contractor.

5. After Exhibit "A" was received in evidence the plaintiff attempted to offer testimony relating to the acts and conduct of the bank on the theory that such testimony tended to show an actual agency as well as an estoppel. The defendant took the position that Exhibit "A" was conclusive and that since the plaintiff had not alleged either a rescission or a modification of Exhibit "A" she could not offer evidence which would have the effect of showing a relation at variance with

the relation created by the written contract. The court ruled that Ewing was bound by the writing and that therefore the plaintiff could not offer evidence varying the terms of the written contract without pleading a modification of the written agreement.

The plaintiff alleges in her complaint that Ewing was the agent of the bank and that the goods were sold to Ewing as such agent and to the defendant. The bank is liable for the acts of Ewing if he was in truth the agent of the bank, or if, though not in fact an agent, he nevertheless acted as an agent and afterwards the bank ratified his acts with knowledge of the facts, or if the seller of the goods dealt with Ewing as an agent after having been led by the bank's conduct to believe that he had authority to act as an agent. In other words, the plaintiff can recover upon proving an express or implied appointment, or a ratification, or an estoppel: *Rumble* v. *Cummings,* 52 Or. 203, 208 (95 Pac. 1111). The allegations of the complaint permit the introduction of evidence showing that the bank either expressly or impliedly appointed Ewing as its agent; and the pleading also permits the plaintiff to prove ratification, because ratification, subject to certain exceptions, has a retroactive efficacy and is equivalent to an original authority: *Mahon* v. *Rankin,* 54 Or. 328, 343 (102 Pac. 608, 103 Pac. 53); 2 C. J. 516 and 906; Mechem on Agency (2 ed.), § 394. Assuming that an estoppel is sufficiently pleaded in the reply, the averment of agency in the complaint plus the allegations relating to an estoppel in the reply authorized the introduction of evidence to prove an estoppel.

The written contract between the bank and Ewing is not necessarily conclusive upon third persons. Neither the plaintiff nor her assignors were parties to the writing, nor did either of them have knowledge of

the agreement or of its terms when the goods were sold; the law did not require the controverted authority to be in writing; and therefore, even though the terms of Exhibit "A" created an agency, a third person would not be compelled to resort to the writing to prove the agency, but the existence of the agency could be proved by any available evidence, such as admissions, course of dealing and the like, or liability could also be established by evidence of an estoppel; and moreover even though the writing be produced the instrument is not necessarily conclusive, because the bank would be bound to third persons to the extent that it caused authority to appear to third persons even though such apparent authority be different from the authority actually created by the writing. The liability of the bank would be measured by the apparent rather than the real authority notwithstanding the fact that the apparent authority is greater than or different from the real authority: *Kaskaskia Bridge Co.* v. *Shannon,* 1 Gilm. (6 Ill.) 15; *Curtis* v. *Ingham,* 2 Vt. 287; *Bryer* v. *Weston,* 16 Me. 261; *Campbell* v. *Hood,* 6 Mo. 211; *Walsh* v. *Pierce,* 12 Vt. 130; *Rawson* v. *Curtiss,* 19 Ill. 456; *Griffin* v. *Doe,* 12 Ala. 783; 10 Ency. of Ev. 13; 1 Mechem on Agency (2 ed.), § 259. The plaintiff was entitled to offer parol evidence to show that the bank appointed Ewing as its agent, or that the bank ratified acts done by Ewing as agent, or that the bank is estopped to deny agency.

6. It is not necessary to give a detailed statement of the facts which the plaintiff attempted and offered to prove, but it is enough to say that even though the plaintiff had been permitted to introduce all the evidence offered by her, nevertheless it would have been the duty of the court to grant a nonsuit. There would have been an utter want of evidence to show that Ewing

had been in fact appointed as an agent. The fact that the bank took charge of the wood when Ewing breached his contract did not operate as a ratification because the bank merely took what it owned; and moreover the essential elements of ratification were absent: 2 C. J. 495. Nor would the evidence have been enough to raise an estoppel, for the reason that some of the necessary elements of an estoppel, if not all the elements, would have been lacking: 2 C. J. 444, 461, 464; 1 Mechem on Agency (2 ed.), §§ 245, 246.

7. Inasmuch as there may be further litigation between the parties and in view of the fact that it was contended that a check signed by Ewing and approved by Myers, the president of the bank, made Ewing an agent of the bank, we direct attention to the following authorities which hold that payment of workmen by the owner does not necessarily transform an independent contractor into an agent: *Smith* v. *Belshaw,* 89 Cal. 427 (26 Pac. 834); *Bellamy* v. *F. A. Ames Co.,* 140 Ky. 98 (130 S. W. 980); *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 574 (93 Pac. 377); *Good* v. *Johnson,* 38 Colo. 440 (88 Pac. 439, 8 L. R. A. (N. S.) 896); *Miller* v. *Minnesota & N. W. Ry. Co.,* 76 Iowa, 655 (39 N. W. 188, 14 Am. St. Rep. 258); 14 R. C. L. 77.

Although the trial court erred in holding that the writing was conclusive, nevertheless the result of the trial would have been the same even though the plaintiff had been permitted to introduce all the evidence offered by her, and the judgment appealed from is therefore affirmed.                    Affirmed.

McBride, C. J., Burnett and Benson, JJ., concur.