In re THOMAS DEUTSCHLE & CO. (1)

(District Court, M. D. Pennsylvania. October 24, 1910.)

No. 1,445.

1. BANKRUPTCY (§ 348*)—CLAIMS—PREFERENCE—"WORKMEN"—"WAGES."

Bankrupts operated a sash, door, and blind factory; claimants having charge of the blind and sash departments under contract, by which claimants employed and discharged their own men and were responsible for the work that they turned out, but for convenience the men drew their wages from the bankrupts, the pay rolls being made out by claimants and turned in for that purpose. Claimants were compensated by an agreed schedule of prices for each character of work turned out; the bankrupts in general furnishing materials, as well as the tools and machinery. All the employés were subject to certain factory rules prescribed by the bankrupts, and the hours of the men were regulated by the shop whistle; the amounts received by claimants depending on their success in managing their departments and getting out the work for less than the scheduled prices. *Held,* that claimants were not "workmen," nor their compensation "wages," within Bankr. Act July 1, 1898, c. 541, § 64b, subd. 4, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447) giving priority to wages due to workmen earned

---

within three months before bankruptcy proceedings, not exceeding $300 to each claimant.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. § 348.*

For other definitions, see Words and Phrases, vol. 8, pp. 7369-7373; vol. 8, p. 7831; vol. 8, pp. 7522-7523.]

2. BANKRUPTCY (§ 348*)—PRIORITY OF CLAIMS—"WAGES."

"Wages" is the reward paid for labor. It is none the less wages because it is paid for by the piece; but compensation for labor is not wages, where payment is by the job, nor where it consists of the profits derived from the labor of others, and this, though the claimant himself takes part in the work.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. § 348.*

For other definitions, see Words and Phrases, vol. 8, pp. 7369-7373; vol. 8, p. 7831.]

In the matter of Thomas Deutschle & Co., bankrupts. On exceptions to the report of a referee denying priority of alleged labor claims of J. Wesley Kemery and D. A. Shollenberger. Exceptions overruled.

See, also, 182 Fed. 435.

W. E. Schnee, for exceptants.

A. R. Jackson and M. C. Rhone, for trustee.

ARCHBALD, District Judge. A claim has been proved by J. Wesley Kemery for $153.56, which is said to be for wages, and priority is sought for it on that basis.

The claimant worked for the bankrupt under a written contract, a copy of which is given in the margin.† The total amount coming to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† This agreement by and between Thos. Deutschle & Co., of Montgomery, manufacturers of sash, doors, blinds, and general mill work, party of the first part, and Wesley Kemery, of the same place, foreman and contractor, party of the second part.

Said party of the second part agrees to make work for the said party of the first part, for and in consideration of prices named and set to the annexed schedule, which is a part of the agreement.

Party of the first part agrees to furnish power, machinery, machine tools, belting, lumber and nails for the purpose of this agreement. Party of the second part agrees to furnish good and sufficient labor to make good and workmanlike goods, to pack and crate the same, and mark the number of each order on each bundle, to clean shop daily, also sweep and clean the dust off all work done in this department and to comply with the rules for the regulation and government of employés, and fire regulations, to the satisfaction of the said party of the first part.

It is also agreed that all special orders are to be made before stock orders, and to be finished within ten days from the receipt of same, and that any or all goods spoiled or rejected on account of mistakes and inferior workmanship shall be charged to the said party of the second part, and whenever such goods are sold the proceeds shall be placed to the credit of the said party of the second part. It is further agreed that the said party of the second part will pay for himself and employés for all goods or lumber spoiled in process, and to furnish all oils, lace leather and files for his department, and will keep machines in good condition, pay for all repairs on each machine to the amount of ($5.00) five dollars, natural wear and tear excepted.

The said party of the first part agrees to pay to the said party of the second part on or about the middle of each month all money due under this contract, for work done during the preceding month, an account of the same to be taken

him at the time of the failure was $495.84, but $342.28 of this was due to the men under him, who proved their claims and got them paid as wages; and it is the balance only that is now in question. The referee denied priority to the claim, simply allowing it to come in as an ordinary debt, along with other creditors, and it is this action that is the subject of exception.

The establishment of the bankrupts was a sash, door, and blind factory, and the claimant had charge of the blind department, with some 10 or 12 men working for him. These men he employed and discharged, and was responsible for the work that they turned out; but for the sake of convenience they drew their wages from the bankrupts, pay rolls being made out by the claimant and turned in for that purpose. The compensation of the claimant was regulated by an agreed schedule of prices; the bankrupts, with one or two exceptions, furnishing the materials as well as the tools and machinery, and the claimant the required labor. For time work he was to get a cent an hour above that which he paid to the men employed by him, and was to pay the same for that which he himself required of the bankrupts

---

from the shippers' book; and the said party of the second part agrees to deposit with the said party of the first part a pay roll duly signed by each employé in full for wages for the said previous months work in the blind department.

It is also hereby agreed by the party of the second part that he will not use himself or tolerate the use among his employés of intoxicating liquors, such as whisky, beer, etc.

Party of the first part reserves the right to discharge, any or all employés who disregard these rules, or those whose actions and conversations interfere with the business interests of the party of the first part.

### Schedule for Making Blinds.

| | |
|---|---|
| For rolling and stat., ½ pivot per foot, per two fold 4/4, 5/4, and 6/4 | 4½ c |
| For rolling and stat., ½ pivot per foot, per two fold 8/4 | 4½ c |
| For slat doors 4/4, 5/4 and 6/4 | 18 c |
| Extra for segment head blinds, per pair | 10 c |
| Extra for circle, peak and gothic head, per pair | 25 c |

### Inside Blinds.

| | |
|---|---|
| For W. Pine, Y. Pine, Poplar and Chest. per foot, per two fold | 5½ c |
| For Birch, Ash, Oak, or Walnut per foot, per two fold | 8 c |

Above prices are for flat and raised panel, also include cutting, polishing, packing and crating blinds, with order number marked on each crate as directed.

The 4/4, 5/4 and 6/4 sash are also to be cut in this department, price of same to be 1½ cents per pair, and must be cut within one week from receipt of order.

For all time work done by the party of the second part for the party of the first part, the party of the second part will charge the party of the first part one cent per hour in advance of said employé's wages. Also, for all the work done by the party of the first part for the party of the second part, the party of the first part will charge the party of the second part one cent per hour in advance of said employé's wages.

It is understood and agreed that this agreement will continue in force for the period of one year, or until January 1st, 1910.

The above agreement signed, sealed and executed in the presence of witness this twelfth (12th) day of January, 1909.

Witness: Margaret Parr. [Signed] J. W. Kemery.

[Signed] Thos. Deutschle & Co.

to complete his piece work. And the claim as made out corresponds with this. In March, 1909, there is a charge of $29.63, for the work of certain employés so many hours at so much an hour. In April there are charges for piece work turned out, mainly blinds, and also for the work of employés, aggregating together $383.36. And in May the charges are $106.29, and are of a similar character, with $24.09 of deductions. This, with a charge of $1.65 by the claimant for helping to take an inventory, makes up the total, $495.84, on which, as already stated, the bankrupts are credited with the wages of employés paid by the trustee, $342.28, leaving $153.56, the amount in issue.

The case is controlled by the bankruptcy act, which gives priority, among other things (section 64, subd. 4), to:

"Wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of proceedings, not exceeding $300 to each claimant."

The amount of the present claim and the time when it accrued are within the terms of the statute; but the question is whether the claimant was a workman, and his compensation wages. As understood in the statutes giving a preference to wages, a workman is one who works for others at manual labor, skilled or unskilled. Commonwealth v. Butler, 99 Pa. 535. And the reward of his labor is wages. It is none the less such because it is paid for by the piece. Pennsylvania Coal Company v. Costello, 33 Pa. 241. But it is not wages, where payment is by the job. Heebner v. Chave, 5 Pa. 115. As for sawing lumber at so much a thousand. Lang v. Simmons, 64 Wis. 529, 25 N. W. 650; Campfield v. Lang (C. C.) 25 Fed. 128. Or threshing a quantity of grain at so much a bushel. Johnston v. Barrills, 27 Or. 251, 41 Pac. 656, 50 Am. St. Rep. 717. Nor where it is profits on the labor of others. Smith v. Brooke, 49 Pa. 147; Sleeman v. Barrett, 2 H. & C. 934; Riley v. Warden, 2 Exch. 59. And it does not help this that the person himself takes part in the work. Berkson v. Cox, 73 Miss. 339, 18 South. 934, 55 Am. St. Rep. 539.

Judged by these authorities, the claimant is not entitled to a preference. He was not a workman within the meaning of the law, and neither were his earnings wages. He had charge, no doubt, of the blind department of the bankrupts' factory; but he was not a foreman or head workman, so as to bring him within the statute. The relation was peculiar. The men under him were his own, hired and discharged by him, and he was paid for the work which they turned out at so much a piece, and was answerable for it, as, for instance, if it was spoiled, or not properly finished. This work was done at the factory of the bankrupts, with the aid of materials and machinery which the bankrupts furnished, but was none the less that of the claimant; the men working for him and under his direction, in making blinds, which he had contracted for. When they went outside of this, to do work for the bankrupts, the claimant was entitled to a cent an hour advance on the wages that he paid them; and he was charged the same amount when any of the bankrupts' men were called upon to assist him. The bankrupts, it may be, supervised it all, and at times gave directions. And the hours of the men were regulated by the

shop whistle, just as their wages were taken care of by the bankrupts, for the claimant, on pay day. The blind department, also, as so organized, was a part of the general establishment. But the fact remains that the claim presented here, for which priority is asked, arises out of a contract with the bankrupts, by which the claimant agreed to put out certain work for a certain price, furnishing his own men, and getting the benefit of their labor. The labor done was not his, but that of his men, however he may have, in a general way, participated in it; and he profited according as he managed to get good work out of them. In this he was not a workman or laborer, but an employer of labor, and the remuneration to which he was entitled was not wages, but an agreed price for articles produced, which the law does not undertake to preferentially provide for.

A claim is also put forward by D. A. Shollenberger in the same way, but is not materially different. He worked for the bankrupts under a similar arrangement; the contract being verbal, having been put in writing, but not executed. He also, the same as Kemery, had charge of a part of the mill, the sash department, and was to furnish the men, while the bankrupt supplied the machinery and materials, with certain small exceptions; the compensation being fixed by a schedule of prices, according to the character of the work, for which he was to be responsible. If the bankrupts cut out the stock for the windows, there was to be a corresponding reduction. The claim, as made out, is for $174.04, and is mainly for windows. He had from four to eight men working for him, whom he hired and paid, although there was a provision that his monthly pay rolls were to be taken care of by the bankrupts; and this was done at times, but not always, the claimant usually drawing the money which was coming to him, and doing his own paying.

There is nothing in all this to distinguish the claim from that of Kemery, and it must be similarly disposed of. As to the bankrupts, the claimant was an independent contractor, agreeing to do certain work by means of the men he employed, and being paid accordingly. No doubt he gave his time and attention to the job, which he had to do, if he expected to prosper from it; but that did not make him a workman, nor what he was to get wages.

The exceptions are overruled, and the report of the referee is confirmed.