(No. 26961.—

OZARK MINERALS COMPANY, Appellee, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellant.

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 11, 1943.*

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for appellant.

LANSDEN & LANSDEN, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, Director of Labor of the State of Illinois, made an assessment of $403.95 against appellee for delinquent contributions which he found due and owing by appellee under the Unemployment Compensation Act, with

respect to persons he found employed by it as prospectors, miners and drillers (hereinafter referred to as prospectors and miners) for the period from July 1, 1937, to October 1, 1939. On writ of *certiorari* the circuit court found those persons to be independent contractors and not employees of appellee, declined to pass on constitutional questions raised by appellee, ordered the assessment set aside and quashed the record filed in the cause. The Director here seeks review of the judgment of the lower court. No cross errors have been filed.

The facts are not in dispute. Appellee, Ozark Minerals Company, operates a silica processing mill at Elco, Alexander county, Illinois, obtaining its entire supply of crude silica from lands owned or controlled by it near the mill. The company denies liability under the act to make unemployment-compensation contributions for men engaged under individual contracts with it as prospectors and miners, though it is admitted that the work performed by such men is in the usual course of the company's business and upon company land. It further appears that of the men so engaged, most were farmers who did farm work in the summer, and others who engaged in odd jobs, and that they were at liberty to engage in other occupations during the existence of their contract. All the contracts in this record were in the name of and signed by each of two prospectors and miners. The two men worked together and employed no helper, except on rare occasions when one wished to be away from the work for a day or less. The contracts for such occupation are essentially the same. Each provided a scale of payment based on results actually completed, either as prospector or miner. Tools were to be furnished by the company, the workers to maintain and keep the same in good repair at their own expense, and on termination of the contract they were to return them in as good condition as when received, the usual wear excepted. The contractors agreed to mine, prepare and

maintain at said mines an ample supply of crude silica as requested from time to time by the company, and on failure so to do the company had the right to make other arrangements for mining and preparing an ample supply of crude silica and charge the expense thereof to the contractors, or the company could elect to do such mining and preparing of crude silica upon its own account. The contract provided that the crude silica should be of a quality and grade ordinarily acceptable to the company for milling and manufacture into finished material at its mill in Elco, Illinois. The company had the right to reject any crude silica not of acceptable quality and grade and no payment was to be made for any rejected silica, one half the cost of handling such rejected silica to be paid by the contractors. The contracts were cancellable by either party after prescribed notice. The company had the sole right to assign its contracts and reserved the right to make agreements and contracts with other persons to perform work or conduct operations similar to those covered by the agreement. Certain requirements specified in the contract were to be followed by the contractors in performing their contract, *viz.*, size of holes drilled, grade of silica mined and location of work on premises. In these contracts the contractors were given the right to employ additional help to fulfill the contracts. They assumed liability for damages for injuries or disease arising out of employment, to their employees, the public, and employees of others as well as property damage, and accepted exclusive liability for contributions under the Federal Social Security Act, Illinois Unemployment Compensation Act, and all similar acts. The contracts further provided that the contractors have full control of the manner, means and method of carrying out contracts and they were not barred from performing like services for others. Appellee states similar contracts have been used since 1932. The decision of the trial court was that those persons so contracting

were not employees within the meaning of the act. Appellant assigns as error the court's ruling in that respect.

The pertinent provisions of the Unemployment Compensation Act are sections 2(d), 2(f)(1), and 2(f)(5). (Ill. Rev. Stat. 1937, chap. 48, par. 218, and as amended in 1939.) Subparagraph (d) of section 2 defines "employing unit." Subparagraph (f)(1) defines "employment" as follows: "Subject to the other provisions of this subsection, 'employment' means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied." Subparagraph (f)(5) of section 2 provided: "Services performed by an individual for wages shall be deemed to be employment subject to this Act, unless and until it is shown to the satisfaction of the Director that—(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is engaged in an independently established trade, occupation, profession or business." Subparagraph (f)(1) was amended in 1939 by eliminating "for wages or under any contract of hire, written or oral, express or implied," and by inserting in lieu of the words eliminated "by an individual for an employing unit, and including all services performed by an officer of a business corporation." The words "for wages" were eliminated from subparagraph (f)(5) by the 1939 amendment. In 1941 the General Assembly amended section 2(f)(5) by striking out the language "shown to the satisfaction of the Director," and inserted in lieu thereof, "proven in any proceeding where such issue is involved." Ill. Rev. Stat. 1941, chap. 48, par. 218, sec. 2(f)(5), p. 1616.

The primary question is whether these prospectors and miners were employees or independent contractors. If they were not employees under the Unemployment Compensation Act, the judgment should be affirmed. If it be determined that they were employees, then it will be necessary to determine whether, as such, they were exempted under subparagraphs A, B, and C of section 2(f)(5) of the act. Appellee, to sustain the judgment, insists the workers were independent contractors, hence not covered by the act, and appellant insists they were employees, not exempt under subparagraph (f)(5) of section 2. In determining whether a workman is an employee or an independent contractor, the principal consideration, under the general rule pertaining to employer and employee, is the right to control the manner of doing the work. Not the actual exercise of the right by interfering with the work, but the right to control, constitutes the test. (*Amalgamated Roofing Co.* v. *Travelers Ins. Co.* 300 Ill. 487.) "An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." (Jaggard on Torts, sec. 73.) The fact that payment is to be made by the piece, the job, the day, the hour, or the ton, does not necessarily control, where the workman is subject to the control of the employer as an employee and is not a contractor. *Franklin Coal and Coke Co.* v. *Industrial Com.* 296 Ill. 329; *Bristol & Gale Co.* v. *Industrial Com.* 292 Ill. 16; *Decatur Railway and Light Co.* v. *Industrial Board,* 276 Ill. 472; Shearman & Redfield on Negligence, (6th ed.) 165.

The test most often resorted to, in determining whether one is an employee or an independent contractor, is to ascertain whether the one doing the work represents the master as to the result of the work only, or as to the means. If he represents the master only as to the result and himself selects the means, he must be regarded as an independent contractor. (*Pace* v. *Appanoose County,* 184 Iowa, 498,

168 N. W. 916.) The mere fact that the owner may have an overseer or architect to see that the work complies with the contract or that the work is done to the owner's satisfaction, does not change the character of the contract, if it meets the test stated. *Pace* v. *Appanoose County*, 184 Iowa 498; *Humpton* v. *Unterkircher*, 97 Iowa 509, 66 N. W. 776; Thompson on Negligence, (2d ed.) sec. 629.

In *Vane* v. *Newcombe & Smith*, 132 U. S. 220, 33 L. ed. 310, Vane contracted with Newcombe & Smith as receivers of a telegraph company to string and attach six additional wires to poles between Freeport, Ohio, and Hammond, Indiana, at an agreed price of $45 per mile, the receivers to furnish all material, pay freight and deliver the material to Vane without cost to him. In a suit to perfect an employee's first lien upon the property of the telegraph company, the Circuit Court of Appeals held that Vane was not an employee within the meaning of the statute considered, but an independent contractor, and that he had no lien under the statute. In affirming the judgment the Supreme Court of the United States said: "It seems clear to us that Vane was a contractor with the Company, and not an employee within the meaning of the statute. We think the distinction pointed out by the circuit court is a sound one, namely, that to be an employee within the meaning of the statute Vane 'must have been a servant, bound in some degree at least to the duties of a servant, and not,' as he was 'a mere contractor, bound only to produce or cause to be produced a certain result,—a result of labor, to be sure,—but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party'."

In the case before us appellee, under the terms of the contract, did not nor could it exercise any control over the work of the miners and prospectors other than set out in the contract, and reserved only the right to reject silica that was not of acceptable grade, in which case the miners were not paid for mining the silica. It seems clear that

under the general rule these miners and prospectors were not employees but contractors.

The act, however, defines "employers" or "employing units" and "employment," as those terms are used in the act. The act was adopted to alleviate the stress of unemployment, and this court held in *Miller, Inc.* v. *Murphy,* 379 Ill. 524, that the act rather than the common-law concept of master and servant governs that relationship. In *Rozran* v. *Murphy,* 381 Ill. 97, that holding was extended to the issue whether the services were those of an employee or contractor, but in no case has this court held that where the service does not come within the definition of "employment" or "employing unit" as defined in this act, the one rendering that service becomes an employee. The act in no way destroys the relation of contractor or subcontractor. The miners and prospectors were independent contractors and not employees of appellee, unless it can be said that appellee came within the definition of an "employing unit" in section 2(d), and unless it can further be said that under the act the miners and prospectors are deemed to be in "employment."

Section 2 of the Unemployment Compensation Act, in subparagraph (d), defines "employing unit" and "who shall be deemed to be an employee." That subsection, so far as applicable to the present inquiry, is as follows: " 'Employing unit' means any individual or type of organization, including any partnership, association * * * which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this state. * * * Whenever any employing unit contracts with or has under it any contractor or subcontractor for any work which is part of its usual trade, occupation, profession, or business, unless such contractor or subcontractor at the same time that he is performing work for such employing unit performs work or is in fact actually available to perform work for anyone who may wish to contract

with him and is also found to be engaged in an independently established trade, business, profession or enterprise, or unless the employing unit as well as each such contractor or subcontractor is an employer by reason of section 2, subsection (e), or section 3, subsection (c) of this Act, the employing unit shall for all the purposes of this Act, be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such work; except that each such contractor or subcontractor who is an employer by reason of Section 2, subsection (e) or Section 3, subsection (c) of this act shall alone be liable for the employers' contributions measured by wages payable to individuals in his employ, and except that any employing unit who shall become liable for and pay contributions with respect to individuals in the employ of any such contractor or subcontractor who is not an employer by reason of Section 2, subsection (e) or Section 3, subsection (c) of this Act, may recover the same from such contractor or subcontractor. Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this Act, whether such individual was hired or paid directly by such employing unit or by such agent or employee, provided the employing unit had actual or constructive knowledge of the work."

This section brings the employees of an independent contractor or subcontractor dealing with an "employing unit" within the act as employees of the "employing unit," with the exceptions therein specified. Nowhere does the act declare that an independent contractor or subcontractor may be considered an employee of the employing unit.

The miners and prospectors in this case being contractors, available to perform work for anyone who might wish to contract with them, and they and each of them being

engaged in other work, such as farming, gardening, and other independent employment except during such time as they chose to devote to mining and prospecting, it cannot be said that as to them appellee was an employing unit.

That the General Assembly intended to tax only employing units upon the wages of employees and not independent or subcontractors, is clearly shown by subparagraphs (f)(1) and (f)(5) of section 2. We believe the reasonable construction of section 2(f)(1) as in force from 1937 to July 1, 1939, is that to constitute "employment" it was required that there be services performed for wages or under a contract of hire. Here, there were no wages, nor was there a contract of hire. Webster defines "hire" as, "to engage or purchase the labor or services of anyone for compensation or wages, as to hire a servant, an agent, or advocate." By the amendment of section 2(f)(1) in 1939, (Ill. Rev. Stat. 1939, p. 1614,) "employment" means services by an individual for an employing unit. By the language of subsection (d) there is excluded such services of an independent contractor, as there provided. True it is, appellee owned or leased the land in which the minerals were found, and it could, as a part of its operations, have employed workmen to prospect and mine silica under its direction and for a specified wage. Instead it elected to contract with others to do the prospecting, at a given rate per foot of digging, and to mine the silica at a given rate per ton for all acceptable silica mined. If no prospecting was done and no silica mined, it was under no obligation to pay. The prospectors and miners worked when they pleased. They were not under the direction or control of appellee, but did their work as they saw fit to do it. It can scarcely be said from these facts that appellee engaged or purchased labor or services of the prospectors and miners. The contract did not provide for compensation for labor but for a tunnel or for a ton or tons of silica mined and ready for loading. It can not be said that the owner of

a lot who engages an independent contractor to dig a
cistern of named dimensions and to pay, for such cistern,
a stated sum per cubic yard for the excavation, when fin-
ished, is paying wages, any more than it could be said that
if A contract with B and C to build a barn on his farm
he is paying them wages for such construction. In such
case, what A is paying for is a barn and not wages.

Before appellee was liable to pay under section 2(f)(5),
it must be shown that it was, so far as these contractors
were concerned, an "employing unit." Appellee was not
an employing unit so far as such prospectors and miners
were concerned, hence section 2(f)(5), as in force in 1937,
has no application. The amendment of section 2(f)(5)
eliminating the words "for wages," does not affect ap-
pellee, as the prospectors and miners were, under the view
we take, independent contractors and not performing ser-
vices for appellee. The judgment of the circuit court was
right and is affirmed.                    *Judgment affirmed.*

Mr. JUSTICE MURPHY, specially concurring:

I agree with the conclusion reached in the majority
opinion but I cannot agree with the construction given
the act in reference to independent contractors. My views
are that there is no provision in the act which expressly
provides that any particular contractual labor relationship
such as master and servant and independent contractor
shall be included or excluded. The glossary of the act
contains definitions of who are to be considered as em-
ployers, what constitutes an employing unit and what is
employment within the act, but the language used does
not indicate that the division line between those employ-
ments that are within and those that are without the act
is marked by any of the common-law concepts of a relation
of master and servant or independent contractor. In con-
sidering a similar argument advanced as to the relation
of master and servant in *Miller, Inc.* v. *Murphy,* 379 Ill.

524, it was said: "It is also plain that the provisions of the statute differ from common-law concepts of employment where the relation of master and servant exists." See also *Rozran* v. *Murphy*, 381 Ill. 97, to the same effect.

The Unemployment Compensation Act was adopted for the purpose of alleviating to some degree the poverty and distress that accompanies unemployment. As a solution of such problem it was provided that the employer should contribute certain amounts and the employee should add a certain percentage of his wages to the creation of a reserve to be drawn upon for the benefit of the employee in periods when he could not obtain employment. As a guide to the interpretation and application of the statute, section 1 declares that the public policy embodied in the adoption of the act shall be the betterment of the conditions of the employee and his family and to safeguard the public against burdensome obligations of furnishing aid to those who, through no fault of theirs, could not obtain employment. The purposes of the act, the conditions it was intended to correct and the ones who are the intended beneficiaries are of importance in considering the meaning of the act and the employments it was intended to include.

Subparagraph (e)(1)(B) of section 2 directs that for the year 1940 and thereafter an employer means any employing unit that has or had in its employment six or more individuals for a specified minimum of time. This definition of an employer is not complete for it relates back to another question as to what constitutes an employing unit. Subsection (d) of section 2 defines an employing unit to mean "any individual or type of organization including any partnership, association * * * which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this State." It will be noted that the remaining provisions of subsection (d) deal with particular labor relationships, principally those relating to contractors or subcontractors.

The majority opinion holds that there is sufficient in these provisions to show an intent to exclude a relation of independent contractor from the act. Allowing for a rearrangement of the language used to the end that the intent may be more readily discerned, it would read that any employer of labor who qualifies as an employing unit and who has contracted with or has under his control any contractor or subcontractor, who has been engaged to perform labor which is part of the employer's usual trade, occupation, profession or business, then such employing unit shall be deemed to employ each individual who is in the employ of such contractor or subcontractor unless the facts disclose one or more of the conditions, *viz:* first, (a) that the employees of the contractor or subcontractor are not to be deemed to be the employees of the employing unit if the contractor or subcontractor is in fact actually available to perform work for anyone who may wish to contract with him, and (b) if such contractor or subcontractor is also found to be engaged in an established trade, business or enterprise independent of the one in which the employing unit is engaged, or secondly, unless the employing unit, as well as each contractor or subcontractor, is an employer by reason of subsection (e) of section 2 or subsection (c) of section 3. It is expressly provided that if such contractor or subcontractor is an employer by reason of subsection (e) of section 2 or subsection (c) of section 3, he alone shall be liable to contribute to the fund on account of such employees, measured by the wages of the individuals in his employment.

It will be observed that these latter provisions were evidently designed for the purpose of making certain that the employees of contractors and subcontractors would be within the purview of the act and entitled to its benefits, either as employees of the contractor or subcontractor, who are themselves employing units, or as employees of the employing unit who engaged the contractor or subcontractor to perform the services. It is well known that

those who engage to render services as contractors or sub-contractors are oftentimes employed under terms that create a relation of independent contractor, but it does not follow that the provisions of the statute referred to evidence an intent to make the relationship of independent contractor the guide by which the act shall be applicable. Suppose one contracts under terms creating a relationship of independent contractor to perform services and he has no employee, then the foregoing provisions have no application to him. Under the definition of an employing unit in subsection (d) of section 2, he would be deemed to be an employee of the employing unit which contracted with him notwithstanding the terms of the contract created a relationship of independent contractor. This is not to hold that his employment would be within the act, for it might well be that he would, by the definition of subsection (d) of section 2, be an employee of the employing unit and yet the services might be rendered under such circumstances as to make his employment outside the scope of the act.

Paragraph (1) of subsection (f) of section 2 provides that subject to other provisions of the act "employment" shall mean any service performed prior to July 1, 1940, which was employment as defined in this section prior to that date, and any service performed after June 30, 1940, by an individual for an employing unit. The essentials of the definition are (1) that there shall be an employing unit; (2) that there shall be an individual who renders the service and (3) that the individual shall render the service pursuant to employment by the employing unit. The general definition of employment refers to the character of the service as "any service performed by an individual for an employing unit." Paragraph (5) of subsection (f) of section 2 provides that services performed by an individual shall be deemed to be employment subject to the act unless and until the conditions stated in subparagraphs (A) (B) and (C) are proved. The general

definition of employment as contained in paragraph (1) of subsection (f) of section 2 and paragraph (5) of said subsection would include services such as those performed by the employees in question unless the conditions under which the services rendered are excluded by subparagraphs (A) (B) and (C) of paragraph (5) are found to have been proved.

In my view there is nothing in any of the foregoing subparagraphs that excludes an employment from the operation of the act merely because it was rendered under circumstances creating a relation of independent contractor. The act is remedial social legislation and should be con-strued and applied to meet the purposes for which it was designed. In marking the boundaries for its application there is evidence of a studied purpose to disregard former concepts of the relation of master and servant and independent contractor as sole guides and to place the applicability of the act upon other grounds. (*Rozran* v. *Durkin*, 381 Ill. 97.) Cases from other jurisdictions adopting this view are cited in the *Rozran case*.

Mr. JUSTICE GUNN joins in the foregoing special concurrence.

Mr. JUSTICE THOMPSON, dissenting:

Recognizing that this case involves a close question as to the proper construction to be given the 1939 amendment of section 2(f) 1, of the Unemployment Compensation Act, and with due deference to the considered opinion of the majority of the court, I am unable to arrive at the conclusion reached in this opinion. In my judgment the majority opinion, by implication at least, contravenes previous holdings of this court as to the construction to be given the Unemployment Compensation Act. I am unable to agree that the miners and prospectors in this case come within the definition of an "employing unit" engaged in an independently established trade, business, profession or

enterprise, and accordingly they should be classed as employees of appellee, as the employing unit.

It is clear that the General Assembly intended to tax only employing units, but that does not, it seems to me, justify the conclusion that to constitute "employment" the services must be performed for wages, as the term "wages" is commonly accepted. The manner of payment is not controlling. The word "wages" must be considered as compensation paid for labor, whether it be a specified sum for given time of service or a fixed sum for specified piece work. (*Patten Package Co.* v. *Houser*, 136 So. (Fla.) 353, 356; *Champion* v. *Hermitage Cotton Mills*, 98 S. C. 418, 82 S. E. 672; *In re Thomas Deutche*, 182 Fed. 430.) Thus, compensation for services on the basis of tonnage, acreage or sugar content of cultivated beets, has been held not to render the person receiving such compensation as engaged in business for himself. *Employers' Mut. Ins. Co.* v. *Ind. Com.* 74 Colo. 201, 219 Pac. 1078.

We have heretofore definitely held that the provisions of the Unemployment Compensation Act differ from common-law concepts of employment where the relation of master and servant exists. (*Miller* v. *Murphy*, 379 Ill. 524; *Rozran* v. *Durkin*, 381 Ill. 97; *Peasley* v. *Murphy*, 381 Ill. 187.) To obtain exemption from coverage under the Unemployment Compensation Act, an employer has the burden of proving that the workmen were free from direction over the performance of the services, and, in fact, that the services were either outside the usual course of the employer's business or were performed outside of all places of the business or enterprise for which such services were performed, and that the workmen were engaged in an independently established trade, occupation, profession or business. *Peasley* v. *Murphy*, 381 Ill. 187.

Tested by the foregoing rules to which this court has heretofore definitely committed itself, it is my firm conviction that the parties claiming unemployment compensation in this case were not beyond the pale of the benefits

of the act, the purpose of which is to include, by re-definition, many individuals who would have been otherwise excluded by the former concepts of master and servant, and principal and agent as recognized at common law. *Rozran* v. *Murphy*, 381 Ill. 97.

The majority opinion recognizes that payment by the piece, job or tonnage does not control, where the workmen are subject to the control of the employer. It is conceded that the prospectors, drillers and miners, here concerned, are engaged in the company's usual course of business and upon the company's land. Tools were furnished by the company, which were to be returned to the company on termination of the employment relationship. The workmen were to prepare and maintain at the company's mines an ample supply of crude silica *as requested* by the company. Failure to do so on their part gave the company the right to terminate the contract. The company had the right to reject any crude silica not acceptable to it on account of quality and grade and to refuse to pay for rejected material. The company reserved the right to make contracts with others to perform the same work or to conduct such operations on its own account. In the performance of their contracts certain specified requirements made by the company had to be followed by the workmen, such as the size of the holes to be drilled, the grade of silica to be mined and the location of their work. It is difficult to imagine a more complete control over them than that reserved by the company.

Since the burden was on appellee, to obtain exemption, to prove all of the conditions enumerated in the statute, it seems clear that there is a material failure on appellee's part to sustain that burden. The conceded fact that the workmen reserved the right to work for others is insufficient to establish the fact that they were engaged in an established trade, occupation, profession or business. Obviously they were not permitted to do the same kind of work for another mining company if it interfered with the re-

quirements of appellee. There is no proof that they were actually engaged in performing like services for others through an established trade, occupation or business. That they were permitted to perform farm work and odd jobs and to engage in other occupations during the existence of their contracts with the company was no proof that they were engaged in an independently established trade, occupation, profession or business. The exclusion terms of the statute, "independently established trade, occupation or business" must be limited to the character of work involved and not to odd jobs and farming, which constitute merely an avocation as distinguished from an established vocation. The illustration mentioned in the majority opinion that the owner of a lot, who engages an independent contractor to dig a cistern at the specified sum per cubic yard of excavation when finished, is not an employee, is not *apropos*. If the cistern digger is paid in that manner for work done in the usual course of the lot owner's regular business, he might well be an employee, whereas if he be engaged on his own account in the established trade or business of taking contracts for digging cisterns for others, or if, in an isolated contract he was to dig the cistern for a lot owner, who was not going to use it as a part of his established trade or business, the relationship of employer and employee would not exist. The conclusion reached in the majority opinion, it seems to me, provides an unwarranted means of escape from the burdens of the Unemployment Compensation Act, which were placed upon employers for the public welfare. The act as a whole evinces a deliberate legislative purpose to include in its beneficent aspects all workers to whose security unemployment is a threat. *Peasley* v. *Murphy*, 381 Ill. 187.

In my opinion appellee has failed in its burden of proving that the workmen in this case do not come within the class entitled to receive benefits, and the judgment of the circuit court ought to be reversed.